IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COLIN SKARIA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:20-CV-1203-D |
| VS. | § | |
| | § | |
| ABBOTT LABORATORIES, INC., | § | |
| et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

This is a removed action by plaintiff Colin Skaria ("Skaria") against defendants Abbott Laboratories, Inc.[1] ("Abbott") and Fortitude Systems International, LLC ("Fortitude") arising from a failed prospective employment relationship. Skaria alleges a claim for breach of contract and an alternative claim for promissory estoppel against Fortitude, and brings claims for negligence, negligent and intentional misrepresentation, and fraud against both Fortitude and Abbott. In addition to other forms of relief, he seeks exemplary damages. On defendants' motions for summary judgment, the court dismisses Skaria's claims against Fortitude for breach of contract and exemplary damages and his claims against Abbott for intentional misrepresentation and fraud, but denies summary judgment as to all other claims.

_____

[1]Abbott contends that it is incorrectly named in this lawsuit and that its proper name is Abbott Laboratories, not Abbott Laboratories, Inc.

I

In September 2018 Denis Ortleb ("Ortleb"), an Abbott manager, needed temporary workers on an upcoming project.[2]   Although Abbott typically used a third-party—TAPFIN—to fill temporary staffing needs, in this instance Ortleb was dissatisfied with the quality of the candidates TAPFIN presented.  So Ortleb enlisted the services of Fortitude, a staffing agency with whom he had previously worked.

That same month, Fortitude contacted Skaria to recruit him for the Abbott project. Skaria's primary contacts at Fortitude were Lex Gaumer ("Gaumer"), a recruiter, and Cam Costello ("Costello"), an account executive.  According to Skaria, when he inquired whether Fortitude was a preferred vendor with Abbott, Gaumer and Costello confirmed that it was. And Fortitude represented that Costello and Ortleb were good friends and that Fortitude had previously placed several candidates with Abbott.

Skaria asked Fortitude whether the opportunity with Abbott could be pursued through a business-to-business contract—i.e., a contract between Fortitude and Skaria's corporation, Magnum Solutions, Inc. ("Magnum")—under which Magnum would work on behalf of Abbott and be paid directly by Fortitude, which would allow Skaria to be paid at a higher hourly rate than if he were employed in his individual capacity.  Fortitude confirmed that the

---

[2]In deciding defendants' motions for summary judgment, the court views the evidence in the light most favorable to Skaria as the summary judgment nonmovant and draws all reasonable inferences in his favor.  *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

opportunity could be pursued individually or through a business-to-business contract.

On October 19, 2018 Ortleb and another project manager interviewed Skaria at Abbott. Ortleb told Skaria that he had worked with Fortitude previously on similar projects and discussed November 19, 2018[3] as a start date for the position. Skaria asserts that Abbott represented that it would communicate with him through Fortitude.

After the interview, Ortleb informed Fortitude that he wanted to hire Skaria with a start date of November 19, 2018. On November 1, 2018 Gaumer sent Skaria an email stating:

> Congratulations on the job with Abbott Labs! Attached you will find all of the start paperwork. I will also need copies of a voided check, Corporation Certificate of Insurance, and 2 forms of ID. I have CC'd our admin team on this. You will be starting at Abbott Labs on Monday November 19 @ 9am. I will be sending you the appropriate information to complete your drug test.

Skaria 5-21-2021 App. (ECF No. 45-1) 78 (emphasis omitted).

According to Skaria, on the same day, Costello informed Skaria that Abbott required him to resign his then-current position at Innovista Health Solutions ("Innovista") so that he could be ready to move forward with Abbott. Before resigning, Skaria requested that Fortitude confirm Abbott's position and start date in writing.

Gaumer's November 1, 2018 email to Skaria included a Master Services Agreement ("MSA") that contained, *inter alia*, the terms of the business-to-business relationship and the

---

[3]At various points in Skaria's amended complaint and in his briefing, he refers to a November 19, 2019 start date, but this is a typographical error.

specifics of Skaria's assignment with Abbott.  That same day, Skaria signed the MSA as President of Magnum and returned it along with various other documents.  On November 2, 2018 Skaria texted Gaumer to inform her that he had returned the signed documents. Gaumer responded the she had received the documents and that they were all set for the time being.  Also on that same day, Skaria filed Magnum's certificate of formation in Texas.

On November 4, 2018 Skaria submitted his resignation to Innovista (effectively two weeks before the November 19, 2018 start date listed in the MSA).  The next day, Skaria completed his drug test.  On November 8, 2018 Fortitude emailed Skaria a copy of the MSA that included Fortitude's signature.

On November 13, 2018 Ortleb informed TAPFIN that he had selected the candidates for his project and inquired about the logistics of staffing candidates "that do not come from our list of suppliers."  Abbott 4-23-2021 App. (ECF No. 33-2) 217-18.  On November 16, 2018 TAPFIN informed Ortleb that "[t]he only way we would be able to move forward with these candidates is if Fortitude agrees to release them to us and their contact information." *Id*. at 220.  TAPFIN also told Ortleb that it would be unable to onboard Fortitude as a vendor because TAPFIN was reducing its supply base.  According to Ortleb, he then spoke with Costello and they began pursuing vendor approval for Fortitude.

On November 20, 2018, one day after Skaria's original start date, Gaumer emailed Skaria an updated MSA that reflected November 26, 2018 as his new start date.  In the email, Gaumer advised Skaria that Fortitude was missing certain forms (Skaria's W9, a certificate of insurance, a void check and direct deposit form, and his emergency contact information).

According to Skaria, Fortitude later informed him that his start date had been moved back again, this time to December 3, 2018.  During this time, Costello informed him that he would not be starting on November 19, 2018, as planned, because Abbott was still waiting on an executive vice president to sign off on a start date.

In January 2019, due to difficulties contacting Costello, Skaria called Ortleb directly and learned for the first time that Fortitude was not an approved vendor but was attempting to become one.  When Skaria asked Ortleb about an anticipated start date, Ortleb informed him that it could take weeks, months, or years.  Later that month, Ortleb informed Costello that he (Ortleb) would need to hire other workers since Fortitude had not yet been approved.  Fortitude eventually obtained approved vendor status, but not in time for Abbott to use any of Fortitude's candidates on the project for which Ortleb had sought the temporary workers.

Skaria asserts that, as a result of the events described—i.e., his relying on misrepresentations, accepting employment with Abbott, and resigning from Innovista—he suffered out-of-pocket damages, including losing income for several months, withdrawing from his 401k, borrowing from church members, taking his son out of preschool, taking out loans, and incurring credit card debt.  Ultimately, Skaria filed this lawsuit against Abbott and Fortitude in Texas state court, after which it was removed to this court based on diversity of citizenship.  In separate motions, Abbott and Fortitude now move for summary judgment.  Skaria opposes the motions.  The court is deciding the motions on the briefs.[4]

---

[4]The parties have made evidentiary objections in their briefing.  Because the court is not relying on any evidence to which an objection has been made, it overrules the objections

II

When a party moves for summary judgment on a claim on which the opposing party will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovant's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party does so, the nonmovant must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory if the nonmovant fails to meet his burden. *Little*, 37 F.3d at 1076.

III

Because Skaria's contention that the MSA is ambiguous impacts other issues presented by the instant motions (i.e., those that assume the MSA is unambiguous and can be interpreted by the court as a matter of law), the court will address this question before turning to the specific grounds on which Fortitude and Abbott seek summary judgment.

---

without prejudice as moot.

- 6 -

A

"Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole, in light of the circumstances present when the contract was entered." *Orthoflex, Inc. v. ThermoTek, Inc.*, 983 F.Supp.2d 866, 872 (N.D. Tex. 2013) (Fitzwater, C.J.) (citation omitted), *aff'd sub nom. Motion Med. Techs., L.L.C. v. ThermoTek, Inc.*, 875 F.3d 765 (5th Cir. 2017). "Where the contract can be given a definite legal meaning or interpretation, it is not ambiguous, and the court will construe it as a matter of law." *Id.* "In the context of contract interpretation, only when there is a choice of reasonable interpretations of the contract is there a material fact issue concerning the parties' intent that would preclude summary judgment." *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004) (per curiam) (citation omitted) (Texas law). "An ambiguity does not arise simply because the parties advance conflicting interpretations of the contract." *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996) (citations omitted). "For an ambiguity to exist, both interpretations must be *reasonable*." *Id.* (emphasis in original) (citations omitted).

B

Skaria primarily contends that the MSA is ambiguous because it defines "the Company"—one of the parties to the MSA—as Abbott, whereas Fortitude maintains that "the Company" refers to Magnum, Skaria's company. Section 1 of the MSA states: "Parties. This Agreement is entered into between Fortitude International LLC, DBA Fortitude Systems ('Fortitude') and [Abbott Labs] ('the Company')." Fortitude 4-23-2021 App. (ECF No. 36-

1) 79 (bold font omitted; bracketed material in original).

Fortitude responds that the MSA's reference to Abbott as "the Company" is a misnomer, and that it would be unreasonable to interpret the MSA as an agreement between Fortitude and Abbott. According to Fortitude, consideration of the MSA as a whole, and the circumstances in which it was entered, leaves no doubt that "the Company" refers to Magnum.

Although the court disagrees with Fortitude's position that the reference to Abbott as "the Company" is a misnomer,[5] the court nevertheless concludes as matter of law that this reference does not render the MSA ambiguous. This is because, when the MSA is considered as a whole, it would be unreasonable to interpret "the Company" as referring to Abbott rather than Magnum.

First, the signatories to the MSA and to an exhibit to the MSA are Fortitude (signed by its Director of Business Operations) and Magnum, signed by Skaria, its President. Fortitude 4-23-2021 App. (ECF No. 36-1) 88-89. Abbott is not a signatory. Similarly,

---

[5]Fortitude's reliance on cases involving the doctrine of misnomer is misplaced. "Misnomer arises when a plaintiff sues the correct entity but misnames it." *Chilkewitz v. Hyson*, 22 S.W.3d 825, 828 (Tex. 1999) (citation omitted) (distinguishing misnomer from misidentification, which occurs "when two separate legal entities actually exist and a plaintiff mistakenly sues the entity with a name similar to that of the correct entity"). Although Fortitude cites a case applying the doctrine of misnomer in the context of contract interpretation, the circumstances are distinguishable from the instant case. *See AmeriPath, Inc. v. Hebert*, 447 S.W.3d 319, 329-30 (Tex. App. 2014, pet. denied) (deciding whether a contract was unenforceable because it named "ADFW," a nonexistent entity, as a party, as opposed to "DFW," the intended party). Accordingly, the court will apply the standard principles of contract interpretation.

Skaria signed the worker acknowledgment and confidentiality agreement in his individual capacity.  *Id.* at 94.  This document provides that it "is made in consideration of my assignment by [Magnum Solutions Inc.] ('Company'), which may assign me to provide temporary services to [Abbott Labs] ('Client')."  *Id.* at 90 (bracketed material in original).

Second, § 13 of the MSA, the contract's notice provision, includes only Fortitude and Magnum (not Abbott) as the parties who are entitled to "notices required or permitted to be given under the Agreement."  Fortitude 4-23-2021 App. (ECF No. 36-1) 87.

Third, several other provisions of the MSA, considered in light of the surrounding circumstances and the MSA as a whole, demonstrate that it would be unreasonable to construe the term "the Company" as referring to Abbott rather than Magnum.  For example, § 2 states, *inter alia*: "Fortitude provides staffing services and related services.  Fortitude is engaging the Company to fill staffing needs of Fortitude's Clients ('Clients').  The Company shall supply temporary workers ('Assigned Workers') to the Client to complete projects that support Client's staffing needs.  Fortitude's Clients are third party beneficiaries of this Agreement."  Fortitude 4-23-2021 App. (ECF No. 36-1) 79.  The only reasonable interpretation of § 2 in light of the MSA as a whole is that "the Company" refers to Magnum and "the Client" refers to Abbott.  If § 2 were construed so that "the Company" meant Abbott, then it would effectively provide that Abbott was supplying temporary workers to itself.

When the MSA is viewed as a whole, in light of the surrounding circumstances, the only reasonable interpretation is that the parties to it are Fortitude and Magnum, Skaria's

company, and that the reference to Abbott is an error. Because the MSA is unambiguous and can be interpreted as a matter of law, the court "need not consider any extraneous evidence of the parties' intent to ascertain the true meaning of the instrument." *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 334 (Tex. 2011) (citation omitted).

## C

Skaria separately argues that the MSA is ambiguous because of an incomplete sentence in § 2. The sentence in question reads "This agreement does not" and is found at the end of the section on "Services." Fortitude 4-23-2021 App. (ECF No. 36-1) 79. But Skaria does not point to any issue to which the interpretation of this provision in § 2 is relevant. Nor does Skaria contend that this incomplete sentence renders a material term of the MSA so indefinite as to render the contract as a whole susceptible to more than one reasonable interpretation. Accordingly, the existence of this incomplete sentence in § 2 does not impact whether summary judgment is or is not warranted as to any of Skaria's claims. *See Kanan v. Plantation Homeowner's Ass'n*, 407 S.W.3d 320, 331 (Tex. App. 2013, no pet.) (rejecting argument that ambiguity rendered contract unenforceable because the alleged ambiguity was not relevant to "any dispute, or potential dispute" and did not arise out of "essential or material terms").

## D

Skaria also lists the following as alleged ambiguities: (1) "[t]he MSA requires a ten (10) day notice for cancellation which Skaria never submitted or received, but Fortitude does

not argue the contract is still in effect;" (2) "[t]he MSA requires invoices between the parties, which never occurred;" (3) "[t]he MSA has a mandatory arbitration, venue, and choice of law provision which were not enforced presumably because Fortitude knows the MSA does not apply;" (4) "the MSA requires that Fortitude provide the contract with Abbott to Skaria which never happened because such contract never existed." P. 5-21-2021 Br. (ECF No. 40) 13-14 (footnote omitted).  The court concludes that these arguments do not undercut the conclusion that the MSA is unambiguous as a matter of law.

E

Accordingly, the court concludes that the MSA is unambiguous and that the court can construe it as a matter of law when deciding a summary judgment issue that involves an interpretation of the MSA.[6]

IV

Fortitude moves for summary judgment on Skaria's breach of contract claim, contending that he has no evidence that he and Fortitude had a meeting of the minds on the alleged essential terms of the contract, that Fortitude offered him those terms, or that Fortitude consented to those terms.

_____

[6]Skaria also maintains that the MSA is invalid because Magnum was not a legal entity at the time Skaria executed the MSA.  But "when a promoter signs a contract on behalf of an unformed entity, he is personally liable on the contract unless there is an agreement with the contracting party that the promoter is not liable."  *Kahn v. Imperial Airport, L.P.*, 308 S.W.3d 432, 438-39 (Tex. App. 2010, no pet.).

- 11 -

A

Skaria alleges that "[Skaria] and Fortitude entered into a verbal contract where Fortitude agreed to search for and secure employment for [Skaria] among a group of companies for which they were charged to search for employment." Am. Compl. 4, ¶ 27. Fortitude contends that Skaria has no evidence to support the factual allegations regarding the material terms of the alleged oral[7] contract. It maintains, *inter alia*, that in contrast with the contractual terms alleged in the amended complaint, Skaria testified that Fortitude contacted him in connection with a specific opportunity at Abbott, not to conduct a general employment search on his behalf. Fortitude also points to Skaria's deposition testimony that Fortitude first contacted him in September 2018 about the specific position with Abbott; that, during the initial phone call, Fortitude informed Skaria that Abbott was looking for an independent contractor, not a full-time employee; and that Skaria cannot identify any other opportunities that he discussed with Fortitude, whether as a contractor or full-time employee, and cannot recall applying to or interviewing for other positions while he was pursuing the opportunity at Abbott, whether through Fortitude or on his own behalf. Fortitude posits that there is no evidence that Fortitude agreed to conduct a general employment search on Skaria's behalf, as asserted in the amended complaint, and that the evidence, in fact directly contradicts Skaria's allegations.

Skaria responds that he entered into a verbal contract with Fortitude under which

---

[7]Skaria uses the adjective "verbal" and Fortitude uses the adjective "oral." This difference in terminology is immaterial.

Fortitude offered to place him with Abbott for a job (if Abbott selected him) in exchange for Skaria's agreeing to exclusive representation by Fortitude. Skaria maintains that this verbal agreement was evidenced in writing by an exclusivity agreement.

B

Skaria has failed to present sufficient evidence to support the existence of an oral agreement based on the material terms alleged in his amended complaint. Although the relevant proof would enable a reasonable jury to find that Fortitude contacted Skaria as a potential candidate for a position at Abbott, it would not enable a reasonable jury to find that Fortitude promised to find and secure employment for Skaria more generally.

The exclusivity agreement that Skaria cites also fails to support the existence of such a promise. The exclusivity agreement states, in pertinent part, that "[i]n consideration of your time, effort and expense in interviewing me for a position with Abbott Laboratories, specifically identified as a Business Analyst, I give you my exclusive authorization to submit me as a candidate *for such assignment*." Skaria 5-21-2021 App. (ECF No. 41-1) 136 (bold font omitted; emphasis added). This language is insufficient for a reasonable jury to find that Fortitude promised to secure employment for Skaria in connection with a general employment search.

In his summary judgment response, Skaria frames the oral contract at issue as an agreement that Fortitude would place him in a position with Abbott, if Abbott selected him, in exchange for his agreement that Fortitude would represent him exclusively. But Skaria cannot withstand summary judgment on this basis because this is not the contract claim

- 13 -

pleaded in his amended complaint, which alleges the existence of a contract that contains materially different terms.  "A properly pleaded complaint must give 'fair notice of what the claim is and the grounds upon which it rests.'"  *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 Fed. Appx. 200, 204 (5th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 698-99 (2009)).  "[D]istrict courts do not abuse their discretion when they disregard claims or theories of liability not present in the complaint and raised first in a motion opposing summary judgment."  *Id.*  "This rule also encompasses new factual theories supporting previously pleaded legal theories." *Ware v. U.S. Bank Nat'l Ass'n*, 131 F.Supp.3d 573, 578 (S.D. Miss. 2015) (collecting cases).

The court therefore concludes that Skaria has failed to present sufficient evidence to enable a reasonable jury to find in his favor on the breach of oral contract claim pleaded in his amended complaint, and it grants summary judgment dismissing this claim.[8]

V

Skaria pleads in the alternative a promissory estoppel claim against Fortitude.

A

Fortitude contends that it is entitled to summary judgment dismissing this claim because the subject matter of the MSA, a written contract, is the same as the subject matter of Skaria's promissory estoppel claim, that is, that all of the complained-of promises arose

---

[8]Because the court holds that summary judgment is warranted on this basis, it need not consider Fortitude's other arguments in support of dismissing Skaria's breach of oral contract claim.

out of Skaria's pursuit of the independent contractor opportunity with Abbott.  Fortitude maintains that this precludes Skaria from recovering under his quasi-contract theory of promissory estoppel as a matter of law.  It reasons that Skaria's promissory estoppel claim turns on allegations that Fortitude represented that it was an approved vendor of Abbott, that Abbott was presented as a viable option for employment for Skaria, but that Skaria failed to secure the job because Fortitude was not an approved vendor.

Fortitude also maintains that the MSA contains a merger clause that provides that the writing constitutes the entire agreement and supersedes all prior agreements and any oral or written representations; that the MSA is silent on whether Fortitude is an approved vendor for Abbott; and that where, as here, the complained-of promises pre-date a written contract, and the written contract contains a merger clause that expressly supersedes any prior representations, a plaintiff cannot recover for promissory estoppel.

Although Skaria addresses his alternative promissory estoppel claim in his response brief, he does not directly address the arguments on which Fortitude relies.  Instead, he identifies the factual basis for his claim, discusses the required elements for the claim, asserts that Texas procedural rules permit a plaintiff to allege alternative and mutually exclusive claims, and explains why he maintains he has satisfied all the required factual elements for a promissory estoppel claim.

When addressing the MSA, however, Skaria advances the following relevant arguments: first, that the MSA "only contemplates, addresses, and governs the relationship between various parties once Skaria begins working the job at Abbott and remains

- 15 -

completely silent on anything that occurred prior to Skaria's start date with Abbott[,]" Skaria 5-21-2021 Br. (ECF No. 40) 12-13; and, second, that because Fortitude's promise that it was an approved vendor with Abbott does not vary or contradict the terms of the MSA, the court may consider it.

B

"Under Texas law, '[t]he requisites of promissory estoppel are: (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *MetroplexCore, L.L.C. v. Parsons Transp., Inc.*, 743 F.3d 964, 977 (5th Cir. 2014) (quoting *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)). "Promissory estoppel is not applicable to a promise covered by a valid contract between the parties; however, promissory estoppel will apply to a promise outside the contract." *Richter v. Wagner Oil Co.*, 90 S.W.3d 890, 899 (Tex. App. 2002, no pet.) (citing *El Paso Healthcare Sys., Ltd. v. Piping Rock Corp.*, 939 S.W.2d 695, 699 (Tex. App. 1997, writ denied)). Moreover, when a contract that contains a merger clause does not expressly address an earlier promise, the promise does not provide a basis for a promissory estoppel claim if it violates the parol evidence rule. *See Spicer ex rel. Brady v. Maxus Healthcare Partners, LLC*, 616 S.W.3d 59, 124 (Tex. App. 2020, no pet.); *2001 Trinity Fund, LLC v. Carrizo Oil & Gas, Inc.*, 393 S.W.3d 442, 457-58 (Tex. App. 2012, pet. denied) (collecting cases) (holding that evidence of the alleged promises was incompetent as a matter of law to show a promise under the parol evidence rule and the contract's merger clause); *Highlands Mgmt. Co. v. First Interstate Bank of Tex., N.A.*, 956 S.W.2d 749, 757 (Tex. App. 1997, pet. denied) ("Texas

courts have specifically held that promissory estoppel will not circumvent the parol evidence rule.").

"When parties have entered into a valid, written, integrated contract, the parol evidence rule precludes enforcement of any prior or contemporaneous agreement that addresses the same subject matter and is inconsistent with the written contract." *West v. Quintanilla*, 573 S.W.3d 237, 243 (Tex. 2019). But the parol evidence rule does not "preclude enforcement of an agreement that is 'collateral' to and not inconsistent with" the contract. *Id.* at 245 (collecting cases). A collateral agreement is one that the parties "'might naturally' make separately under the circumstances." *Id.* (quoting *Hubacek v. Ennis State Bank*, 317 S.W.2d 30, 32 (Tex. 1958)). Agreements that are "related" and "correlated" can be collateral. *Id.* (quoting *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 876 (Tex. 2010)). An agreement is inconsistent with a contract if it "var[ies] or contradict[s] the parties' obligations" or alters the contract's fundamental terms. *Id.* at 247.

## C

The question presented is whether Fortitude's alleged representation that it was an approved vendor of Abbott and that Abbott was a viable option for employment for Skaria is a promise covered by a valid contract between the parties (or is a promise outside the contract), or is a promise that is collateral to, and not inconsistent with, the contract so that allowing the promissory estoppel claim in the face of the MSA and its merger clause will not violate the parol evidence rule.

First, the court holds that Fortitude's alleged promise that it was an approved vendor

- 17 -

with Abbott is a promise made outside the MSA.  Because it is a promise that is  not covered by the MSA, Skaria's promissory estoppel claim is not barred on the ground that it is based on a promise that is covered by a valid contract between Skaria and Fortitude.

Second, the court considers whether Skaria's promissory estoppel claim fails based on the MSA's merger clause and the parol evidence rule.  This question turns on whether the alleged promise is collateral to, and not inconsistent with, the MSA.  *See West*, 573 S.W.3d at 245.

Fortitude's alleged promise that it was an approved vendor of Abbott and that Abbott was a viable option for employment for Skaria is collateral to the MSA because Fortitude might naturally make such a promise separately under the circumstances—i.e., it is the kind of promise that would naturally precede the parties' decision to enter into a more detailed agreement concerning Skaria's placement at Abbott.  *See id.* (quoting *Hubacek*, 317 S.W.2d at 32).  And the alleged promise is not inconsistent with the MSA because it does not vary or contradict any of the MSA's fundamental terms.  *See id.* at 247.

The court therefore holds that the MSA's merger clause and the parol evidence rule do not preclude Skaria from proceeding on his promissory estoppel claim, and it denies Fortitude's motion for summary judgment insofar as addressed to Skaria's promissory estoppel claim.[9]

---

[9]The court notes that Skaria cites two other promises in the promissory estoppel section of his opposition brief.  But because Fortitude does not address either alleged representation in the promissory estoppel section of its motion, or in its reply, the court need not consider them at this time.

VI

The court turns next to Fortitude's motion for summary judgment on Skaria's tort claims for negligence, negligent and intentional misrepresentation, and fraud.  Fortitude maintains that it is entitled to summary judgment on these claims because Skaria cannot establish the essential element of justifiable reliance and the economic loss rule precludes him from recovering because he did not suffer a separate and independent injury.  The court now turns to Fortitude's arguments concerning justifiable reliance.

A

The court begins with Fortitude's contention that Skaria cannot establish the essential element of justifiable reliance for any of his tort claims.  Fortitude's argument appears to be two-fold: first, that one party cannot justifiably rely on representations that directly contradict a written contract between that and another party, and the following alleged misrepresentations contradict the MSA: (1) that Skaria had secured employment with Abbott, and (2) that Abbott required Skaria to resign from his then-current position; and, second, that the MSA's merger clause supersedes all prior representations not contained within the MSA, and, consequently, Skaria cannot establish justifiable reliance on a representation that is outside the MSA.

Skaria responds that, under Texas law, a merger clause does not preclude liability for tort claims if it only contemplates contractual obligations.

Fortitude replies that the plain language of the MSA contemplates both contract and representation-based tort liability, and that Skaria has failed to identify any language within

- 19 -

the MSA indicating that it does not apply to tort liability.

## B

The court must decide as a threshold matter whether justifiable reliance is an essential element of each of Skaria's tort claims. If not, Fortitude is not entitled to summary judgment based on Skaria's failure to establish justifiable reliance.

Under Texas law, justifiable reliance is an essential element of the torts of negligent misrepresentation, intentional misrepresentation, and fraud. *See, e.g., JPMorgan Chase Bank, N.A. v. Orca Assets G.P.*, 546 S.W.3d 648, 653-54 (Tex. 2018) (listing elements of negligent misrepresentation and fraud claims); *Fath v. CSFB 1999-C1 Rockhaven Place Ltd. P'ship*, 303 S.W.3d 1, 5 n.4 (Tex. App. 2009, pet. denied) (citing *Smith v. Tilton*, 3 S.W.3d 77, 82 n.3 (Tex. App. 1999, no pet.)) ("A claim of intentional misrepresentation has the same elements as a fraud claim.").

Justifiable reliance is not, however, an essential element of the tort of negligence. *See, e.g., Doe v. Boys Club of Greater Dall., Inc.*, 907 S.W.2d 472, 477 (Tex. 1995) ("The elements of a negligence cause of action are a duty, a breach of that duty, and damages proximately caused by the breach of duty."). And Fortitude has failed to explain why Skaria must establish justifiable reliance in order to succeed on his negligence claim. Accordingly, the court denies Fortitude's motion to the extent it seeks summary judgment dismissing Skaria's negligence claim on this basis.

## C

The court now considers whether Skaria is precluded from establishing justifiable

reliance on the basis that the MSA's merger clause supersedes all alleged representations not contained within the MSA.

Texas law provides that a standard merger clause that does not disclaim reliance by clear and unequivocal language does not, as a matter of law, negate the reliance element of a claim. *See Italian Cowboy*, 341 S.W.3d at 331. The MSA's merger clause states: "Entire Agreement. This Agreement constitutes the entire agreement between Fortitude and the Company respecting the subject matter hereof and supersedes all prior agreements and any representations whether oral or written. Fortitude and the Company must agree in writing to any modification of this Agreement." Skaria 5-21-2021 App. (ECF No. 41-1) 67 (bold font omitted). Under this clause, Skaria acknowledges that the MSA contains the parties' entire agreement—i.e., that there are no oral representations that modify the terms of the agreement. Skaria does not, however, disclaim reliance on any prior representations. *See Italian Cowboy*, 341 S.W.3d at 336 ("There is a significant difference between a party disclaiming its *reliance* on certain representations, and therefore potentially relinquishing the right to pursue any claim for which reliance is an element, and disclaiming the *fact* that no other representations were made." (emphasis in original)).

Although *Italian Cowboy* concerned reliance generally, rather than justifiable reliance, Fortitude's argument concerning the MSA's merger clause appears to be that the clause precludes reliance on any prior representations outside the MSA *per se*. *See* Fortitude 6-4-2021 Reply (ECF No. 47) 15 ("The MSA's merger clause therefore operates to preclude Plaintiff from relying on any oral or written representations that pre-date the MSA[.]").

Accordingly, the court denies Fortitude's summary judgment motion to the extent it relies on the MSA's merger clause to preclude Skaria from establishing the element of justifiable reliance.

D

Fortitude also contends that Skaria could not have justifiably relied on representations that directly contradict the MSA: (1) that Skaria had secured employment with Abbott, and (2) that Abbott required Skaria to resign from his then-current position.

Under Texas law, justifiable reliance generally presents a question of fact. *Orca Assets*, 546 S.W.3d at 654 (citation omitted). "But the element can be negated as a matter of law when circumstances exist under which reliance cannot be justified." *Id.* (citing *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 424 (Tex. 2015) (per curiam)). One such circumstance is when a party relies "upon an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties." *Id.* at 658 (quoting *DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858-59 (Tex. App. 2003, pet denied)). To determine whether a party's representation directly contradicts a written agreement, courts consider whether "a reasonable person can read the writing and still plausibly claim to believe the earlier representation." *Id.* at 658-59 (endorsing lower court's use of this standard).

First, the court considers whether the MSA directly contradicts Fortitude's alleged representation that Skaria had secured employment with Abbott with a start date of November 19, 2018. It does contradict the MSA, according to Fortitude, because the MSA

- 22 -

makes clear that the opportunity is for an independent contractor rather than for an employee, and because the MSA does not guarantee any minimum amount of work or payment. The court disagrees.

The MSA does not directly contradict Fortitude's alleged representation that Skaria had secured employment with Abbott with a start date of November 19, 2018. In fact, Exhibit A to the MSA contains a work assignment and fee schedule listing a start date of November 19, 2018, a description of the services to be provided, the location of services to be provided, and the hourly rate to be paid. Although the MSA does state that Skaria will work as an independent contractor, the nature of the engagement (independent contractor versus employee) is not so at odds with Fortitude's alleged representation that Skaria had secured employment with Abbott as to warrant summary judgment. Indeed, the nature of Skaria's claim does not hinge on whether he was to work for Abbott as an independent contractor or as an employee. Nor is the MSA's disclaimer that it does not guarantee a minimum amount of work or payment incompatible with the alleged representation at issue. Although the foregoing evidence, if credited by a reasonable jury, might persuade the jury to find that Skaria's reliance was not justified, Fortitude has failed to establish this as a matter of law. This is so because a reasonable person could read the MSA and still claim to believe that Skaria had secured employment with Abbott, as alleged. *See Orca Assets*, 546 S.W.3d at 658-59.

Second, the court considers whether Fortitude's alleged representation that Skaria must resign from Innovista directly contradicts the MSA. Fortitude posits that this alleged

representation directly contradicts a provision in the MSA that states: "This agreement is not exclusive.  Either party may contract with another party to obtain or provide services similar to the Services that are the subject of this Agreement."  Fortitude 4-23-2021 App. (ECF No. 36-1) 85.

The court denies Fortitude's summary judgment motion to the extent it is based on the assertion that the MSA directly contradicts Abbott's alleged requirement that Skaria resign from Innovista.  Although the MSA states that the parties to it are not barred from obtaining or providing similar services, the parties contemplated by this provision are Fortitude and Magnum.  Skaria, on the other hand, is the contractor whom Magnum was to assign to provide temporary services to Abbott.  Accordingly, Abbott's alleged requirement that Skaria resign from Innovista is not incompatible with the MSA's provision that Magnum, a separate corporate entity, may provide similar services to another company.  Because a reasonable person could read the MSA and still believe that Abbott required Skaria, as the contractor to be assigned by Magnum, to resign from his then-current employment, that representation does not directly contradict the MSA.  *See Orca Assets*, 546 S.W.3d at 658-59.

E

Accordingly, the court denies Fortitude's motion for summary judgment to the extent it is based on the argument that Skaria cannot establish justifiable reliance.

VII

Fortitude also moves for summary judgment on the ground that Skaria is precluded by the economic loss rule from recovering on his tort claims.

A

Fortitude posits that Skaria's tort claims are barred by the economic loss rule because he has failed to establish an injury that is independent from the economic losses that would be properly recoverable through a claim that Fortitude breached the MSA. Fortitude maintains that Skaria's claimed damages are purely economic in that he seeks to recover the purported loss of income associated with resigning from Innovista and failing to secure the position at Abbott.[10]

B

Fortitude's argument is unavailing. "The economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy." *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (per curiam) (citations omitted). If, however, "the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit," the economic loss rule does not bar a tort claim. *Id.* (citations omitted).

---

[10]Fortitude also contends that, to the extent Skaria seeks damages based on mental anguish, the symptoms to which he testified do not meet the high standard required for mental anguish damages. The court need not consider this argument because Skaria has not alleged mental anguish damages either in his amended complaint or his response brief.

Fortitude does not assert that Skaria's tort claims involve a duty arising from the MSA.  *See id.*  And Skaria does not suggest that he is suing for "the economic loss of a contractual expectancy."  *Id.*  To the contrary, each of Skaria's tort claims seeks to recover losses arising from his reliance on Fortitude's misrepresentations—i.e., losses related to his resignation from Innovista.[11]  Accordingly, the court concludes that Fortitude is not entitled to summary judgment on Skaria's tort claims based on the economic loss rule.  *See, e.g., Correct Rx Pharm. Servs., Inc. v. Cornerstone Automation Sys., LLC*, 2018 WL 4680568, at *2 (N.D. Tex. Sept. 28, 2018) (Godbey, J.) (holding that economic loss rule did not bar tort claim based on "out of pocket damages and reliance damages" rather than "benefit-of-the-bargain damages"), *aff'd*, 945 F.3d 423 (5th Cir. 2019).

## VIII

Finally, Fortitude moves for summary judgment dismissing Skaria's claim for exemplary damages.

### A

Unless statutorily authorized, "exemplary damages may be awarded only if the

---

[11]For example, in the section of his response brief that addresses his negligence claim, Skaria asserts that "Fortitude told Skaria that it had the ability to place Skaria with Abbott when it did not, and Fortitude told Skaria to quit his employment at the time so that it can begin his work with Abbott which led to financial loss for Skaria."  Skaria 5-21-2021 Br. (ECF No. 40) 19.  Regarding his negligent misrepresentation claim, Skaria maintains that "[a]s a result of relying on Fortitude's negligent misrepresentations, Skaria has suffered out-of-pocket damage including loss of income for several months, withdrawing from his 401k, taking out loans, incurring credit card debt, etc."  *Id.* at 21.  And he supports his intentional misrepresentation and fraud claims with the assertion that he "actually and justifiably relied upon [Fortitude's] representation[s] and thereby suffered injury."  *Id.*

claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud; (2) malice; or (3) gross negligence."  Tex. Civ. Prac. & Rem. Code Ann. § 41.003(a) (West 2021).

When a heightened proof standard will apply to the trial disposition of an issue, that standard applies at the summary judgment stage.  *Liberty Lobby*, 477 U.S. at 254 (holding that where clear and convincing evidence standard would apply at trial of libel action, it applied in determining merits of summary judgment motion).

B

In his amended complaint, Skaria alleges that he is entitled to exemplary damages because "Defendants' breach of its duty of good faith and fair dealing owed to Plaintiff was done intentionally, with a conscious indifference to the rights and welfare of Plaintiff and with 'malice' as that term is defined in Chapter 41 of the Texas Civil Practice and Remedies Code."  Am. Compl. 8.  Fortitude maintains that there is no evidence that the relationship between Skaria and Fortitude is the type of special relationship necessary to impose a duty of good faith and fair dealing.

Skaria responds that a relationship of trust and confidence existed prior to, and apart from, the agreement at issue, and that it is undeniable that Skaria placed his trust and confidence in Fortitude based on Fortitude's actions and representations that would cause any reasonable person to believe that Fortitude would act in Skaria's interest.  Skaria also presents evidence that Fortitude knew that it was not an approved vendor with Abbott when it sent Skaria to Abbott for an interview, sent a communication to Skaria offering him the job

- 27 -

at Abbott, gave Skaria a start date at the Abbott job, and gave Skaria several delayed start dates.

Fortitude replies that Skaria offers only conclusory assertions to support his claim that Fortitude owed him a duty of good faith and fair dealing. According to Fortitude, the mere fact that Skaria placed his trust and confidence in Fortitude is insufficient to give rise to a duty of good faith and fair dealing in this context.

C

Skaria's basis for exemplary damages appears to be that, because Fortitude owed him a duty of good faith and fair dealing, its failure to disclose that it was not an approved vendor with Abbott meets the fraud, malice, or gross negligence standard required for exemplary damages. Given that Skaria's pleaded basis for exemplary damages turns on whether Fortitude owed him a duty of good faith and fair dealing, the court now turns to that question.

1

Under Texas law, "[a] duty of good faith and fair dealing may arise in two contexts." *Hux v. S. Methodist Univ.*, 819 F.3d 776, 781 (5th Cir. 2016). In the first context, the duty of good faith and fair dealing arises due to a formal fiduciary relationship (e.g., principal-agent, attorney-client, or trustee-beneficiary). *Id.* (citing *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Co.*, 823 S.W.2d 591, 593-94 (Tex. 1992)). In the second context, although the parties are not formal fiduciaries, they are in a special or confidential relationship that gives rise to a duty of good faith and fair dealing. *Id.* (citing *Crim Truck*, 823 S.W.2d at 594). Because Skaria's complaint and his opposition brief are devoid of any

allegations (let alone evidence) that a formal fiduciary relationship exists, the court will focus on whether a reasonable jury could find from the summary judgment evidence that Skaria and Fortitude had a special relationship.[12]

Special relationships are "earmarked by specific characteristics including: long standing relations, an imbalance of bargaining power, and significant trust and confidence shared by the parties." *Id.* (citing *Caton v. Leach Corp.*, 896 F.2d 939, 948 (5th Cir. 1990)). For example, "a special relationship exists in the insurance context because of 'the parties' unequal bargaining power and the nature of insurance contracts which would allow unscrupulous insurers to take advantage of their insureds' misfortunes in bargaining for settlement or resolution of claims.'" *City of Midland v. O'Bryant*, 18 S.W.3d 209, 215 (Tex. 2000) (citing *Arnold v. Nat'l Cnty. Mut. Fire Ins.*, 725 S.W.2d 165, 167 (Tex. 1987)). "A party's unilateral, subjective sense of trust and confidence in the opposing party," however, "is not sufficient to give rise to a special relationship and the attendant duty." *Hux*, 819 F.3d at 781 (citing *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997)). The existence of a special relationship is "ordinarily a question of fact," although "when the issue is one of no evidence, it becomes of question of law." *Crim Truck*, 823 S.W.2d at 594 (citing *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962)).

---

[12]Although Skaria's response brief refers to "the fiduciary" and "the fiduciary duty," his argument is based on the assertion that a special/confidential relationship gave rise to the duty of good faith and fair dealing. For example, he does not assert the existence of a principal-agent relationship between Fortitude and himself.

2

The court holds that Skaria has failed to raise a genuine fact issue as to whether a special relationship exists.  As Fortitude points out, Skaria's argument rests on conclusory assertions; he does not direct the court to any evidence in the summary judgment record to support the existence of a special relationship.  Although Skaria maintains that he placed his trust and confidence in Fortitude, a "subjective sense of trust and confidence in the opposing party is not sufficient to give rise to a special relationship and the attendant duty."  *Hux*, 819 F.3d at 781 (citing *Schlumberger*, 959 S.W.2d at 177).

Accordingly, the court grants Fortitude's motion for summary judgment to the extent it seeks to dismiss Skaria's claim for exemplary damages.

IX

The court now turns to Abbott's motion for summary judgment.  Abbott first seeks summary judgment dismissing Skaria's negligence claim on the ground that Abbott did not owe Skaria a duty.

A

Abbott contends that, to establish his negligence claim, Skaria must prove, in pertinent part, circumstances giving rise to a legal duty that Abbott owed to Skaria; that the existence of a duty is a question of law for the court to decide from the facts surrounding the occurrence in question; that Skaria asserts that Abbott had a duty to make sure that it had a position that he could have started on November 19, 2018 through Fortitude; that Skaria asserts that this purported duty arose based on his admittedly false assertions that *Abbott*

represented he had secured a position for employment with a start date of November 19, 2018 and that *Abbott* requested he resign his position; that Skaria made clear by his own testimony that the alleged circumstances giving rise to Abbott's legal duty did not occur, in that Skaria conceded that Abbott did not offer him the contingent assignment, Abbott did not provide him a start date (let alone a November 19, 2018 date), and Abbott did not request that Skaria resign his current employment; and, as a consequence, there are no circumstances that would give rise to a legal duty owed by Abbott to Skaria.

Skaria responds that Fortitude made the representations at issue; that Fortitude was Abbott's agent at all relevant times; that Fortitude acted under Abbott's authority in making the representations at issue; and, therefore, that Abbott's argument that it owed no duty to Skaria is flawed.

B

Abbott's no-duty argument turns on whether a reasonable jury could find that Fortitude acted as Abbott's agent when making the alleged representations at issue.

"An agency relationship, which can be formed by oral agreement between the parties or simply by the parties' conduct, entitles the agent to act on the principal's behalf with the same force and effect as if the principal had performed the act himself." *Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 697 (Tex. 2017) (citations omitted). "Authority to act on the principal's behalf and control are the two essential elements of agency." *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 589 (Tex. 2017) (citations

omitted).[13]  "An agent's authority to act on behalf of a principal depends on some communication by the principal either to the agent (actual or express authority) or to the third party (apparent or implied authority)."  *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007) (citation omitted).  "Absent actual or apparent authority, an agent cannot bind a principal."  *Huynh v. Nguyen*, 180 S.W.3d 608, 622 (Tex. App. 2005, no pet.) (citation omitted).

"Actual authority usually denotes the authority a principal (1) intentionally confers upon an agent, (2) intentionally allows the agent to believe he possesses, or (3) by want of due care allows the agent to believe he possesses."  *United Residential Props., L.P. v. Theis*, 378 S.W.3d 552, 564 (Tex. App. 2012, no pet.) (citation and internal quotation marks omitted).

"Apparent authority is based on the doctrine of estoppel, and one seeking to charge the principal through apparent authority of an agent must establish conduct by the principal that would lead a reasonably prudent person to believe that the agent has the authority that he purports to exercise."  *Biggs v. U.S. Fire Ins.*, 611 S.W.2d 624, 629 (Tex. 1981) (collecting cases).  To determine an agent's apparent authority, the court examines the conduct of the principal and the reasonableness of the third party's assumptions regarding the agent's authority.  *Gaines*, 235 S.W.3d at 183.  "Only the conduct of the principal may

---

[13]Because Abbott has not raised the issue whether it asserted control over Fortitude, the satisfaction *vel non* of this element does not provide a basis for granting summary judgment.  *See Hicks v. R.H. Lending, Inc.*, 2019 WL 1556101, at *10 n.9 (N.D. Tex. Apr. 10, 2019) (Fitzwater, J.) ("Because the court cannot grant a motion for summary judgment on grounds not raised by a party unless it first gives notice and a reasonable time to respond, *see* Rule 56(f), the court will not consider this potential ground for summary judgment.").

be considered; representations made by the agent of his authority have no effect." *Huynh*, 180 S.W.3d at 623 (citing *Suarez v. Jordan*, 35 S.W.3d 268, 272-73 (Tex. App. 2000, no pet.)).

C

Skaria contends that Fortitude had apparent authority to communicate the statements at issue based on Ortleb's representation to Skaria that he had used Fortitude to staff projects on numerous other occasions and that all communications regarding Skaria's placement at Abbott would come through Fortitude.[14]   Skaria also notes that Ortleb made these representations to Skaria while conducting an interview that Fortitude had arranged. According to Skaria, any reasonable person in his situation would be prudent to believe that Fortitude had the authority to make the statements at issue on behalf of Abbott.

Abbott replies that Skaria has not presented any case law to support his position that a previous relationship with a staffing firm is evidence of an agency relationship.  Citing an opinion of the Northern District of Iowa, Skaria contends that a past working relationship is not an indicium of an agency relationship in the staffing context.  *See Horton v. Rockwell Int'l Corp.*, 93 F.Supp.2d 1048 (N.D. Iowa 2000).  Abbott also posits that a prudent person would not take Ortleb's statement that he would be in contact through Fortitude as evidence that Fortitude was authorized to act on behalf of Abbott because Skaria had an exclusive

---

[14]Because the court concludes that Skaria has adduced sufficient evidence to preclude summary judgment under his theory of apparent authority, the court need not consider his arguments concerning actual and implied authority.

agency agreement with Fortitude.

D

The court holds that Skaria has adduced sufficient evidence for a reasonable jury to find that, when Fortitude made the statements at issue, it did so under Abbott's apparent authority.[15]   Skaria testified that, during his interview at Abbott, which Fortitude arranged, Abbott represented to him that it had previously engaged Fortitude to staff projects and that it would communicate with him through Fortitude.  Skaria also testified that Abbott informed him that "this project was through — was through Fortitude Systems with Abbott being the actual location of work."  Skaria 5-21-2021 App. (ECF No. 45-1) 30.  This evidence is sufficient to raise a genuine fact issue concerning whether Abbott's conduct would "lead a reasonably prudent person to believe" that Fortitude acted on behalf of Abbott when it made the alleged statements at issue.  *See, e.g., Biggs*, 611 S.W.2d at 629 (explaining standard for apparent authority).

Skaria's inability to cite a factually similar case does not warrant summary judgment.  For the reasons explained, the court holds that the summary judgment evidence is sufficient to create a genuine fact issue that precludes summary judgment.  And to the extent Abbott relies on *Horton* for the proposition that a past working relationship is not evidence of an agency relationship, that case is not binding on this court and is factually distinguishable.

---

[15]In doing so, the court considers only Skaria's arguments that are based on Abbott's conduct rather than Fortitude's.  *See Huynh*, 180 S.W.3d at 623 ("Only the conduct of the principal may be considered; representations made by the agent of his authority have no effect.").

Unlike *Horton*, Abbott's alleged statement to Skaria concerning its previous engagements with Fortitude is not the only relevant evidence in the summary judgment record.  *Cf. Horton*, 93 F.Supp.2d at 1055.  Finally, although the exclusive agency agreement constitutes evidence that Skaria authorized Fortitude to submit him as a candidate for the position at Abbott, it does not negate the existence of a fact issue concerning Fortitude's apparent authority to act on behalf of Abbott.  Although the jury may find from the trial evidence that, based on the exclusive agency agreement, a prudent person would not reasonably conclude that Fortitude was acting as Abbott's agent, the court cannot make that determination as a matter of law based on the summary judgment record alone.

Because a reasonable jury could find that Fortitude acted under Abbott's apparent authority when it communicated the statements at issue, the court denies Abbott's motion for summary judgment on Skaria's negligence claim.[16]

---

[16]In its reply brief, Abbott presents additional arguments as to why it did not owe Skaria a legal duty.  The court declines to consider these arguments.  *See, e.g., Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990) (Fitzwater, J.) (declining to consider argument raised for the first time in a reply brief).  In Abbott's summary judgment brief, the only ground on which it moves for summary judgment on Skaria's negligence claim is the one addressed above.  *See* Abbott 4-23-2021 Br. (ECF No. 32) 13-15 ("[T]he alleged circumstances giving rise to Abbott's legal duty did not happen—as Skaria made clear by his own testimony. . . .  Consequently, there are no circumstances that would give rise to a legal duty owed by Abbott to Skaria.  Skaria's negligence claim against Abbott fails on this basis alone." (internal quotation marks, brackets, and emphasis omitted)).

X

Abbott next moves for summary judgment dismissing Skaria's negligent misrepresentation claim.

A

Abbott contends that Skaria's negligent misrepresentation claim fails because Abbott did not personally offer Skaria the position at Abbott and provide a start date, or request that Skaria resign his then-current employment. For the reasons discussed above, the court denies summary judgment on this basis.

B

1

Abbott also maintains that one of the alleged representations—that Skaria had secured a position for employment with a start date of November 19, 2018—constitutes a promise of future conduct and therefore cannot support a negligent misrepresentation claim. Skaria responds that the representation at issue is an existing fact rather than a promise of future conduct. According to Skaria, the cases that Abbott cites do not apply because Skaria received a firm offer with a start date rather than a conditional promise of future conduct.

2

"[U]nder Texas law, promises of future action are not actionable as a negligent-misrepresentation tort." *Milton v. U.S. Bank Nat'l Ass'n*, 508 Fed. Appx. 326, 329 (5th Cir. 2013) (per curiam) (citations omitted); *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex. App. 1999, pet. denied) ("[T]he sort of 'false information' contemplated in a negligent

- 36 -

misrepresentation case is a misstatement of *existing fact*, not a promise of future conduct." (emphasis in original)).  But this rule does not entitle Abbott to summary judgment.  The representations at issue in the cases Abbott cites, and the contexts in which they were made, materially differ from the alleged representation at issue here.  In each of those cases, the plaintiff's employer made a promise to *continue* employing or paying the plaintiff.  *See Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 364, 380 (Tex. App. 2007, no pet.) (rejecting negligent misrepresentation claim where plaintiff alleged that employer had reassured him that he would be retained following a merger); *Allied Vista*, 987 S.W.2d at 140-41 (rejecting negligent misrepresentation claim where defendant terminated plaintiff but promised to provide plaintiff all necessary equipment to start a new plant and continue paying plaintiff his salary for the year that it would take him to start the plant); *Airborne Freight Corp. v. C.R. Lee Enters.*, 847 S.W.2d 289, 293, 298 (Tex. App. 1992, writ denied) (rejecting negligent misrepresentation claim where contractors were told "as long as you do your job, you'll have a job," in response to a request for assurances of continued employment).  The present case, however, involves a statement to a job candidate the he had secured the position for which he had interviewed.  Unlike a promise to continue employing or paying an existing employee, a statement that a job candidate has been selected for the position can reasonably be characterized as a representation of existing fact.  *See Valley Reg'l Med. Ctr. v. Wright*, 276 F.Supp.2d 638, 645 (S.D. Tex. 2001) (holding that representation that defendants planned to appoint the plaintiff to a director role did not constitute negligent misrepresentation, but that "it would be a different story if [the plaintiff]

- 37 -

had been told that he had already been appointed"). Abbott has not identified, nor has the court located, any authority to the contrary. Accordingly, the court denies summary judgment on this basis.

## C

Abbott also seeks summary judgment on the negligent misrepresentation claim on the ground that Skaria cannot establish justifiable reliance on any of the alleged misrepresentations.

### 1

Abbott asserts that Skaria's reliance was not justified because he is an experienced businessman and because his reliance was negligent. As evidence of Skaria's business experience, Abbott points out that he was savvy enough to form his own corporation to negotiate a higher rate; that he holds two bachelor's degrees in business; and that he worked extensively as a consultant before pursuing the position with Abbott. Abbott contends that Skaria should have understood that Fortitude needed all of the requested documents before he could start his assignment. Abbott also maintains that Skaria was negligent because he failed to read the entire MSA; he did not consult with an attorney before signing it; and he submitted his resignation three days after signing the MSA, even though he had not yet supplied Fortitude with the requested documents and had not yet received Fortitude's signature on the MSA. Additionally, Abbott posits that, even if Fortitude had been an approved vendor, he could not have started the assignment because there is no evidence that he ever supplied all of the requested documents to Fortitude. Abbott cites *Kenny v. Onward*

*Search*, 713 Fed. Appx. 112 (3d Cir. 2017) for the proposition that it is not reasonable for an individual to believe he has been offered a formal position, or to resign his employment, if he does not provide all of the information that a staffing agency requests.

In response to Abbott's argument concerning Skaria's business experience, Skaria directs the court to his deposition, in which he testified that he does not understand contracts and found the MSA confusing. As evidence that he was not negligent, Skaria points out that he contacted Fortitude to ask what the terms of the contract meant and that he relied on Fortitude's representations; that the MSA listed Abbott as "the Company"; and that he reviewed the portions of the MSA that he believed concerned him—i.e., pay rate, position title, start date, and start time. Skaria also distinguishes *Kenny* on the ground that the plaintiff in that case quit his job without an offer from his prospective employer, whom he knew was awaiting financial approval to hire him.

2

As already noted, justifiable reliance generally presents a question of fact, but under certain circumstances, a court may conclude that reliance cannot be justified as a matter of law. *Orca Assets*, 546 S.W.3d at 654 (citations omitted). "The justifiableness of the reliance is judged in light of the plaintiff's intelligence and experience." *Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 358 (5th Cir. 1996) (Texas law) (citing *Scottish Heritable Tr., PLC v. Peat Marwick Main & Co.*, 81 F.3d 606, 615 (5th Cir. 1996)). "A plaintiff's reliance is unjustified when the reliance is in effect an act of negligence on the plaintiff's part." *Id.* (citing *Scottish Heritable Tr.*, 81 F.3d at 615).

3

Skaria has adduced sufficient evidence to raise a genuine fact issue on the question whether he justifiably relied on Abbott's alleged representations. As discussed above, the terms of the MSA do not directly contradict the alleged representations at issue, so whether the terms of the MSA render Skaria's reliance unjustified remains a fact question for the jury.

Nor can the court grant summary judgment based on Abbott's contention that Skaria's reliance on the MSA was unjustified as a matter of law because the MSA did not constitute an official job offer from Abbott. A reasonable jury could find that Skaria justifiably relied on the representations at issue given Skaria's deposition testimony that he is not adept at contract interpretation; the fact a lawyer did not review the MSA on his behalf; the MSA's inclusion of a pay rate, position title, start date, and start time; and the MSA's mistakenly naming Abbott as a party to the agreement.

The court also disagrees with Abbott's assertion that Skaria did not justifiably rely as a matter of law because he had not supplied Fortitude with all of the requested documents at the time he resigned. Abbott's reliance on *Kenny* is unpersuasive, not only because *Kenny* is not binding on this court, but also because it is distinguishable on its facts. In *Kenny* the plaintiff did not justifiably rely on a prospective employer's representations in quitting his job because the staffing agency "never explicitly told [him] that he had been 'accepted' for the assignment," did not provide him with "a start date or any specific details on the length of the assignment or agreed compensation," and warned him that the prospective employer "needed financial approval before it could extend him an offer of employment." *Kenny*, 713

Fed. Appx. at 114, 117.  Although the court also noted that the plaintiff in *Kenny* had not

submitted a requested document, it is clear that the court did not conclude that his reliance

was unjustified on that basis alone.  *See id.* at 117.  Unlike with regard to the plaintiff in

*Kenny*, a reasonable jury could find that, before Skaria resigned from Innovista, he was

explicitly told that he had been accepted for the assignment, received specific details

(including start date and compensation), and did not receive a warning that any additional

approval was needed.  *Cf. id.* at 114, 117.  Accordingly, *Kenny* is inapposite.  For these

reasons, the court holds that a material issue of fact remains concerning the element of

justifiable reliance.[17]

　　　For the reasons explained, the court denies Abbott's motion for summary judgment

as to Skaria's negligent misrepresentation claim.

XI

　　　Finally, the court turns to the part of Abbott's motion for summary judgment

addressed to Skaria's intentional misrepresentation and fraud claims.  Skaria has not

responded to this ground of Abbott's motion.  Although Skaria's failure to respond does not

permit the court to enter a "default" summary judgment on these claims, *see, e.g. Tutton v.*

*Garland Indep. Sch. Dist.*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.), "[a]

summary judgment nonmovant who does not respond to the motion is relegated to [his]

---

[17]Because the court concludes, based on the grounds discussed, that a fact issue
remains concerning justifiable reliance, it need not address Skaria's additional arguments
concerning justifiable reliance.

unsworn pleadings, which do not constitute summary judgment evidence," *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)).  Moreover,

> [i]f a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion; [and] (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]

Fed. R. Civ. P. 56(e)(2), (3).  Because Skaria has not responded to Abbott's motion for summary judgment with specific evidence to support his intentional misrepresentation and fraud claims, the court grants Abbott's motion and dismisses these claims against Abbott.

\* \* \*

Accordingly, for the reasons explained, the court grants Fortitude's motion for summary judgment as to Skaria's breach of contract claim and his claim for exemplary damages.  The court grants Abbott's motion for summary judgment as to Skaria's claims for intentional misrepresentation and fraud.  The court denies defendants' motions in all other respects.

**SO ORDERED**.

August 25, 2021.

SIDNEY A. FITZWATER
SENIOR JUDGE

- 42 -